# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 17-cv-02224-PAB-MEH

JAMI BORGMANN, an individual;
JUSTIN BORGMANN, an individual;
JAMI BORGMANN and JUSTIN BORGMANN on behalf of their two minor children, S.B. and E.B.;
TONY AUYANG, an individual
MARY RITZ, an individual;
JAMES RITZ, an individual;
DEREK BARR, an individual;
PAIGE BARR, an individual;
ROBBY ORBANOSKY, an individual;
JUDITH ORBANOSKY, an individual;
HANNAH ORBANOSKY, an individual;
PHILIP WINTERLAND, an individual;
JOSLYN WINTERLAND, an individual;
STEVAN ADJEMIAN, an individual;
ASHLEY ADJEMIAN, an individual,
KELSY HERRICK, an individual,
JEFFREY HERRICK, an individual,
KELSY AND JEFFREY HERRICK on behalf of their three minor children, D.H.,M.H., and M.H.

    Plaintiffs,

v.

WEYERHAEUSER COMPANY,

    Defendant.

## SCHEDULING ORDER

### 1. DATE OF CONFERENCE
### AND APPEARANCES OF COUNSEL AND PRO SE PARTIES

Scheduling Conference: November 9, 2017 at 10:30 a.m.

1

Exhibit C

Mark W. Nelson, Esq.
The Nelson Law Firm, L.L.C.
1740 High Street
Denver, Colorado 80218
Telephone: 303-861-0750
mark@nelsonlawfirm.net
*Counsel for Plaintiffs, Jami and Justin Borgmann, Jami and Justin Borgmann on behalf of their two minor children, S.B. and E.B., Tony Auyang, Mary and James Ritz, Derek and Paige Barr, Robby and Judith Orbanosky, Hannah Orbanosky, Philip and Joslyn Winterland, Stevan and Ashley Adjemian, Kelsy and Jeffrey Herrick, and Kelsy and Jeffrey Herrick on behalf of their three minor children D.H., M.H., and M.H. (hereinafter collectively "Plaintiffs" and individually by name)*

Craig M. J. Allely, Esq.
Perkins Coie, L.L.P.
1900 Sixteenth Street, Suite 1400
Denver, Colorado 80202
Telephone: 303-291-2300
callely@perkinscoie.com
*Counsel for Defendant Weyerhaeuser Company (hereinafter "Defendant")*

## 2. STATEMENT OF JURISDICTION

The parties agree that this Court has jurisdiction over the claims and defenses in the instant matter based on complete diversity of citizenship of the parties and pursuant to 28 U.S.C. § § 1332, 1367, 1441, 1446, and D.C. Colo. LCivR 81.1.

## 3. STATEMENT OF CLAIMS AND DEFENSES

a. **Plaintiffs**: Plaintiffs claims in this matter arise out of injuries, damages, and loses resulting from defectively designed and manufactured products produced and sold by Defendant Weyerhaeuser Company ("Weyerhaeuser" or "Defendant"). Weyerhaeuser designed and manufactured "TJI Joists with Flak Jacket Protection" (hereinafter the "Joists"), then sold and distributed Joists for use by homebuilders in new residential construction. The Joists provide the foundation of the first floor of a structure, such as a residential dwelling. The Joists were

2

designed to be fire retardant and were manufactured using harmful chemicals including, but not limited to, formaldehyde, a carcinogen, which causes a multitude of negative health effects, including, but not limited to watery or burning eyes, nose and throat irritation, wheezing coughing, breathing difficulties, fatigue, skin rash, allergic reactions and neurological issues. Exposure to formaldehyde is also known to cause spontaneous abortion, congenital malformations, and premature birth, as well as increased risk of cancer.

On or about June 14, 2017, Mr. and Mrs. Borgmann purchased a newly constructed home located at 4632 Colorado River Dr. in Firestone, Colorado; the home was constructed using the Joists. The Borgmanns and their minor Plaintiff children moved into the home on or about June 14, 2017.

On or about June 28, 2017, the Ritzes purchased and moved into a newly constructed home located at 4633 Colorado River Dr. in Firestone, Colorado; the home was constructed using the Joists.

On or about June 30, 2017, Mr. and Mrs. Orbanosky purchased a newly constructed home located at 4667 Lakeside Dr. in Firestone, Colorado; the home was constructed using the Joists. The Orbanoskys and their adult daughter, Plaintiff, Hannah Orbanksy, moved into the home on or about June 30, 2017.

On or about May 31, 2017, the Winterlands purchased and moved into a newly constructed home located at 6580 Empire Ave., in Frederick, Colorado; the home was constructed with the Joists. On or about May 31, 2017, the Winterlands leased a part of their home to Joyce Winterland's adult brother, Plaintiff, Tony Auyang.

On or about June 30, 2017, the Adjemians purchased and moved into a newly constructed home located at 6584 Empire Ave., Frederick, Colorado; the home was constructed using the Joists.

On or about June 28th, 2017, Mr. and Mrs. Herrick purchased a newly constructed home located at 4692 Colorado River Drive Firestone, Colorado; the home was constructed using the Joists. The Herricks and their minor Plaintiff children moved into the home on or about June 28, 2017.

The Barrs were under contract for a new home and were scheduled to close on June 30, 2017. However, on June 29, 2017, they were notified that the closing was not going to happen due to a "strange odor" in the home. They were thereafter forced to find alternative housing, which they did. The Barr's home was constructed using the Joists.

With the exception of the Barrs, upon moving into their home, Plaintiffs began suffering from burning and watering eyes, nose bleeds, sore throats, headaches, and other various health symptoms consistent with exposure to high concentrations of formaldehyde.

Joslyn Winterland was four-weeks pregnant at the time she moved into her new home and began being exposed to extremely high concentrations of formaldehyde from the off-gassing Joists. The Winterlands lived in the home for approximately four weeks before being notified of the hazardous toxins off-gassing from the Joists at which time they moved out of the home. After having moved out of the home, when Mrs. Winterland was nine-weeks pregnant, her physician informed her the embryo no longer had a heart beat; Mrs. Winterland was forced to undergo a dilation and curettage operation where her cervix was opened up and the embryo removed.

Plaintiffs were first notified in late July that there was a problem with the Joists in the homes and that the Joists were off-gassing harmful levels of formaldehyde, making it unsafe to remain in the homes. Plaintiffs were told to evacuate their home and seek alternative housing elsewhere, which they did.

On July 18, 2017, Weyerhaeuser issued a press release admitting that all of the Joists manufactured after December 1, 2016 are defective. Weyerhaeuser knew or should have known the Joists were designed and/or manufactured in such a manner that would make them unreasonably dangerous for use in new residential construction, such as Plaintiffs' home. Further, Weyerhaeuser had knowledge that the Joists used in Plaintiffs' home were defective and unreasonably dangerous prior to Plaintiffs purchasing and moving into their home. Despite having had knowledge of the defective and unreasonably dangerous Joists, Weyerhaeuser failed to warn or notify Plaintiffs of the condition of the Joists prior to Plaintiffs purchasing and moving into their home.

As a result of Weyerhaeuser's actions and inactions, Plaintiffs have lost the use and enjoyment of their home for an indefinite amount of time and are being forced to reside in temporary housing, causing significant strain on their personal lives and occupations. Further, Plaintiffs have sustained, among other things, bodily injuries, emotional distress, lost income, damage to real and personal property, and diminution in the value of their home and property.

Plaintiffs claim Weyerhaeuser is liable as a product manufacturer pursuant to the Colorado Product Liability Act, C.R.S. §13-21-401 and §13-21-401. Additionally, Weyerhaeuser owed Plaintiffs a duty to act reasonably in the design, manufacture, and sales of the Joists, but

Weyerhaeuser breached its duty to Plaintiffs when it designed, manufactures, and sold the Joists in a defective condition unreasonably dangerous to Plaintiffs.

Weyerhaeuser also had a duty to comply with all statutory and regulatory provisions that pertained or applied to the design, manufacture, sale, and distribution of the Joists including, but no limited to those promulgated by the U.S. Agency for Toxic Substances and Disease Registry and the U.S. Centers for Disease Control and Prevention. Plaintiffs are among the class of persons designed to be protected by the statutory and regulatory provisions pertaining to Weyerhaeuser's design, manufacture, sale, and distribution of the Joists. Weyerhaeuser breached its duty to Plaintiffs and was negligent in its design, manufacture, sale, and distribution of the Joists as the Joists off-gassed concentrations of formaldehyde above and beyond the levels considered to be safe for humans.

Plaintiffs further claim Weyerhaeuser owed them the implied warranties of merchantability and fitness for a particular use in its design, manufacture, sale, and distribution of the Joists. The defective Joists would not pass without exception in the trade or industry and therefore constitute a breach of the implied warranty of merchantability. The defective Joists were not fit for the intended uses and purposes of new residential construction.

Weyerhaeuser's negligence caused an unreasonable risk of harm to Plaintiffs, which caused Plaintiffs to be put in fear for their own safety and such fear was shown by physical consequence or long continued emotional disturbance, rather than only momentary frights, shock, or other similar immediate emotion distress.

Additionally, Weyerhaeuser was subject to the provisions of the Colorado Consumer Protection Act, C.R.S. §6-1-105 et seq. Weyerhaeuser engaged in deceptive trade practices, as

6

defined by the Colorado Consumer Protection Act, C.R.S. §6-1-105 et seq., when it designed, manufactured, marketed, sold, and distributed the Joists in a defective condition unreasonably dangerous to Plaintiffs, despite its having knowledge of the same. The deceptive trade practices include, but may not be limited to: knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property; representing that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, when it knew or should have known that they are of another; and failing to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale with the intent to induce the consumer to enter into a transaction.

As a result of the Weyerhaeuser's negligence, defective Joists, breach of warranties, negligent infliction of emotion distress, and deceptive trade practices, Plaintiffs have sustained, among other things, bodily injuries, emotional distress, lost income, loss of the use and enjoyment of their homes, damage to real and personal property, and diminution in the value of their home and property, the value of which shall be determined at trial.

b.  **Defendant**: Plaintiffs' claims against Weyerhaeuser fail. In the first place, Plaintiffs' claims, which "presume the existence" of their Purchase and Sale Agreements ("PSAs") with their homebuilder, are subject to mandatory mediation and arbitration pursuant to the PSAs. *See generally Meister v. Stout*, 353 P.3d 916 (Colo. App. 2015). Accordingly, Weyerhaeuser has moved to compel arbitration.

Plaintiffs' claims also fail because Weyerhaeuser has already resolved any damages caused by the floor joists by agreeing to bear the costs of remediation, as well as temporary relocation and other related costs while the remediation occurs.

As to Plaintiffs' misrepresentation-based claims, Weyerhaeuser did not sell any joists to Plaintiffs, nor did Weyerhaeuser direct any marketing or advertising of the joists to Plaintiffs. Further, there is no contract between Weyerhaeuser and Plaintiffs to support Plaintiffs' implied warranty claims.

Weyerhaeuser denies that the evidence will support Plaintiffs' claims relating to bodily injuries and emotional distress.

## 4. UNDISPUTED FACTS

The following facts are undisputed:

1. Defendant designed and manufactured "TJI® Joists with Flak Jacket® Protection", then sold and distributed Joists for use by homebuilders in new residential construction.

2. On or about June 14, 2017, Mr. and Mrs. Borgmann purchased a newly constructed home located at 4632 Colorado River Dr. in Firestone, Colorado. The home was constructed using the Joists. The Borgmanns moved into the home on or about June 14, 2017.

3. On or about June 28, 2017, the Ritzes purchased and moved into a newly constructed home located at 4633 Colorado River Dr. in Firestone, Colorado. The home was constructed using the Joists.

4. On or about June 30, 2017, Mr. and Mrs. Orbanosky purchased a newly constructed home located at 4667 Lakeside Dr. in Firestone, Colorado. The home was constructed using the Joists. The Orbanoskys moved into the home on or about June 30, 2017.

5. On or about May 31, 2017, the Winterlands purchased and moved into a newly constructed home located at 6580 Empire Ave., in Frederick, Colorado. The home was constructed using the Joists.

6. On or about June 30, 2017, the Adjemians purchased and moved into a newly constructed home located at 6584 Empire Ave., Frederick, Colorado. The home was constructed using the Joists.

7. On or about June 28, 2017, Mr. and Mrs. Herrick purchased a newly constructed home located at 4692 Colorado River Drive Firestone, Colorado. The home was constructed using the Joists. The Herricks and their three minor children moved into the home on or about June 28, 2017.

8. The Barrs were under contract for a new home and scheduled to close on June 30, 2017. The home was constructed using the Joists.

## 5. COMPUTATION OF DAMAGES

**Plaintiffs:** Plaintiffs expect to claim past damages for, among other things, property damage, and diminished value of the home, any and all repair and/or replacement expenses, loss of the use of any and all portions of the Home, medical bills, attorney fees and litigation costs, and any and all other damages or injuries Plaintiffs may have sustained as a result of the incident alleged in the Complaint. Plaintiffs expect to claim future damages for, among other things, future property damage, and diminished value of the Home, any and all repair and/or replacement expenses, loss of the use of any and all portions of the Home, medical bills, attorney fees and litigation costs, and any and all other damages or injuries Plaintiffs sustain as a result of the incident alleged in the Complaint.

Plaintiffs' have suffered damages in an amount to be determined at the time of trial. Such damages include, but are not limited to:

BORGMANN RESIDENCE:

| DESCRIPTION: | AMOUNT: |
|---|---|
| Monies paid toward home expenses, including mortgage and HOA fees | $13,867.08 |
| Monies paid toward utilities *(TV/Internet/Security, Gas, Electric, Water/Sewer)* | $1,335.75 |
| Furniture replacement costs | $26,753.88 |
| Monies paid towards gas | $737.54 |
| Lost income to date | $14,171.82 |
| Monies paid towards air sampling and testing to date | $1,740.00 |
| Medical expenses to date | $280.91 |
| Monies paid towards dog boarding | $5,400.00 |
| Future out-of-pocket expenses | TBD |
| Future lost income, medical treatment, medical monitoring & air quality testing | TBD |
| Post Remediation Diminution | TBD |
| Non-economic damages | TBD |
| Attorney Fees and Costs | TBD |
| | |
| Total: | $64,286.98 + TBD |

RITZ RESIDENCE:

| DESCRIPTION: | AMOUNT: |
|---|---|
| Monies paid toward home expenses, including mortgage and HOA fees & Monies paid toward utilities *(TV/Internet/Security, Gas, Electric, Water/Sewer)* | $4,784.68 |
| Monies paid towards hotel expenses | $4,593.63 |
| Monies paid toward housing helpers application fee | $60.00 |
| Furniture replacement costs | $21,555.00 |
| Monies paid towards gas and car expenses | $1,080.00 |
| Lost income to date | TBD |
| Monies paid towards air sampling and testing to date | $1,708.00 |
| Medical expenses to date | TBD |
| Future out-of-pocket expenses | TBD |
| Future lost income, medical treatment, medical monitoring & air quality testing | TBD |

| Post Remediation Diminution | TBD |
|---|---|
| Non-economic damages | TBD |
| Attorney Fees and Costs | TBD |
|  |  |
| Total: | $33,781.31 + TBD |

BARR RESIDENCE:

| DESCRIPTION: | AMOUNT: |
|---|---|
| Lost equity in previous home | $46,615.00 |
| Monies paid toward storage, utilities and rent for apartment for three months | $7,500.00 |
| Monies paid towards costs for family relocation during daughter's wedding | $2,985.00 |
| Monies paid towards travel costs | $500.00 |
| Non-economic damages | TBD |
| Attorney Fees and Costs | TBD |
|  |  |
| Total: | 57,600.00 + TBD |

ORBANOSKY RESIDENCE:

| DESCRIPTION: | AMOUNT: |
|---|---|
| Monies paid toward home expenses, including mortgage and HOA fees | $8,785.80 |
| Monies paid toward utilities *(TV/Internet/Security, Gas, Electric, Water/Sewer)* | $1,507.25 |
| Furniture replacement costs | TBD |
| Monies paid towards gas and car expenses | $2,640.00 |
| Lost income to date | $13,054.53 |
| Monies paid towards air sampling and testing to date | $1,708.25 |
| Medical expenses to date | TBD |
| Lost equity in previous home | TBD |
| Future out-of-pocket expenses | TBD |
| Future lost income, medical treatment, medical monitoring & air quality testing | TBD |
| Post remediation diminution | TBD |
| Non-economic damages | TBD |
| Attorney Fees and Costs | TBD |
|  |  |
| Total: | $27,695.83 + TBD |

WINTERLAND/AUYANG RESIDENCE:

| DESCRIPTION: | AMOUNT: |
|---|---|
| Monies paid toward home expenses, including mortgage and HOA fees | $9,691.45 |
| Monies paid toward utilities *(TV/Internet/Security, Gas, Electric, Water/Sewer)* | $658.00 |
| Furniture replacement costs | $22,730.00 |
| Monies paid towards gas | $1,127.84 |
| Lost income to date | TBD |
| Lost income to date (for rental) | $2,000.00 |
| Monies paid towards air sampling and testing to date | $1,600.00 |
| Medical expenses to date | TBD |
| Future out-of-pocket expenses | TBD |
| Future lost income, medical treatment, medical monitoring & air quality testing | TBD |
| Post Remediation Diminution | TBD |
| Non-economic damages | TBD |
| Attorney Fees and Costs | TBD |
|  |  |
| Total: | $37,807.29 + TBD |

ADJEMIAN RESIDENCE:

| DESCRIPTION: | AMOUNT: |
|---|---|
| Monies paid toward home expenses, including mortgage and HOA fees | $11,776.00 |
| Monies paid toward utilities *(TV/Internet/Security, Gas, Electric, Water/Sewer)* | $360.00 |
| Furniture replacement costs | $25,000.00 |
| Monies paid towards gas | $2,122.12 |
| Lost income to date | $8,000.00 |
| Monies paid towards air sampling and testing to date | TBD |
| Medical expenses to date | n/a |
| Future home cleaning services | TBD |
| Future out-of-pocket expenses | TBD |
| Future lost income, medical treatment, medical monitoring & air quality testing | TBD |
| Post Remediation Diminution | TBD |
| Non-economic damages | TBD |
| Attorney Fees and Costs | TBD |
|  |  |
| Total: | $47,258.12 + |

|  | TBD |
|---|---|

HERRICK RESIDENCE:

| DESCRIPTION: | AMOUNT: |
|---|---|
| Monies paid toward home expenses, including mortgage and HOA fees | $8,235.00 |
| Monies paid toward utilities<br>*(TV/Internet/Security, Gas, Electric, Water/Sewer)* | TBD |
| Monies paid towards furniture restocking fees | $900.00 |
| Furniture replacement costs | TBD |
| Monies paid towards gas | $2,404.08 |
| Lost income to date (Kelsy Herrick) | $50,000.00 |
| Lost income to date (Jeffrey Herrick) | TBD |
| Monies paid towards air sampling and testing to date | TBD |
| Monies paid towards gas efficient car | $24,000.00 |
| Monies paid toward installed hardwood floors | $4,600.00 |
| Future repair/replacement costs for installed hardwood floors | TBD |
| Medical expenses to date | TBD |
| Future out-of-pocket expenses | TBD |
| Future lost income, medical treatment, medical monitoring & air quality testing | TBD |
| Post Remediation Diminution | TBD |
| Non-economic damages | TBD |
| Attorney Fees and Costs | TBD |
|  |  |
| Total: | $90,139.08 + TBD |

**Defendant:** Weyerhaeuser denies that Plaintiffs have any damages. Weyerhaeuser is entitled to recover the costs it incurs defending this lawsuit.

## 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED.R.CIV.P. 26(f)

a.   Date of Rule 26(f) meeting: The Rule 26(f) conference occurred over several days beginning on August 30, 2017 and continuing thereafter, including a face-to-face meeting on October 6, 2017. Defendant Weyerhaeuser's view is that the ongoing conference ended on October 19, 2017, when the parties conferred about Defendant Weyerhaeuser's motion to compel

arbitration.

    b.    The following participated in the Fed. R. Civ. P. 26(f) meeting:

> Mark W. Nelson, Esq.
> The Nelson Law Firm, L.L.C.
> 1740 High Street
> Denver, Colorado 80218
> Telephone: 303-861-0750
> *Counsel for Plaintiffs, Jami and Justin Borgmann, Jami and Justin Borgmann on behalf of their two minor children, S.B. and E.B., Tony Auyang, Mary and James Ritz, Derek and Paige Barr, Robby and Judith Orbanosky, Hannah Orbanosky, Philip and Joslyn Winterland, Stevan and Ashley Adjemian, Kelsy and Jeffrey Herrick, and Kelsy and Jeffrey Herrick on behalf of their three minor children D.H., M.H., and M.H.*

> Craig M. J. Allely, Esq.
> Perkins Coie, L.L.P.
> 1900 Sixteenth Street, Suite 1400
> Denver, Colorado 80202
> Telephone: 303-291-2300
> callely@perkinscoie.com
> *Counsel for Defendant Weyerhaeuser Company*

    c.    Plaintiffs served their Fed. R. Civ. P. 26(a)(1) disclosures on November 2, 2017. As ordered, Weyerhaeuser will provide its Rule 26(a)(1) disclosures on or before November 16, 2017.

    d.    *Proposed Changes, if any, in timing or requirement of disclosures under Fed.R.Civ. P. 26(a)(1):* Per the Court's Minute Order dated 11/1/2017 at 11;22 AM, Defendant shall submit its initial disclosures on or before 11/16/2017.

    e.    *Statement concerning any agreements to conduct informal discovery:* The parties have already engaged in informal discovery. In particular, counsel for Plaintiffs has provided Weyerhaeuser with home purchase agreements for certain of his clients. The parties also have

made other, still-pending requests to each other for informal discovery. The parties will endeavor to continue to participate in informal discovery whenever feasible to allow this lawsuit to proceed as efficiently as possible.

  f. *Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system:* The parties will work together to reduce discovery and other litigation costs, including through the use of a unified exhibit numbering system.

  g. *Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form:* Plaintiffs believe that Weyerhaeuser has extensive electronic communication that will need to be disclosed in this case, especially concerning when Weyerhaeuser first became aware that the subject joists were off-gassing dangerous levels of formaldehyde. In Weyerhaeuser's view, this is a simple case, and Weyerhaeuser has already offered to remediate the alleged problems with the Joists. As a result, Weyerhaeuser anticipates that disclosure of only a moderate amount of electronically stored information will be necessary in this case. Weyerhaeuser is preserving its electronically stored information. Weyerhaeuser will provide a privilege log consistent with Fed. R. Civ. P. 26(b)(5) for any privileged documents.

  h. *Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case:* The parties have discussed the possibility of promptly setting this lawsuit. Weyerhaeuser, as it has communicated to counsel for Plaintiffs, remains open to mediating this dispute. To date, Plaintiffs have declined to mediate unless and until

Weyerhaeuser, in Plaintiffs' view, demonstrates a genuine interest in meaningful settlement discussions.

## 7. CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY LIMITATIONS

a.  *Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.* The parties do not propose any modifications.

b.  *Limitations which any party proposes on the length of depositions.* The parties do not propose any modification to the presumptive limit of one day of 7 hours.

c.  *Limitations which any party proposes on the number of requests for production and/or requests for admission.* The parties do not propose any modification to the presumptive limits.

d.  *Other Planning or Discovery Orders:* Before filing a motion for an order relating to a discovery dispute, the movant must request a conference with the Court by submitting an email, copied to all parties, to *hegarty_chambers@cod.uscourts.gov*. *See* Fed. R. Civ. P. 16, cmt. 2015 Amendment..

## 9. CASE PLAN AND SCHEDULE

a.  Deadline for Joinder of Parties and Amendment of Pleadings: November 29, 2017

b.  Discovery Cut-off: Plaintiffs propose June 22, 2018.  Defendant proposes September 28, 2018.  **Court:  August 1, 2018**

      c.      Dispositive Motion Deadline: Plaintiffs propose July 27, 2018.  Defendant proposes November 27, 2018.  **Court:  September 1, 2018**

      d.      Expert Witness Disclosure:

          1.     Plaintiffs may need to call experts in the fields of construction, design and manufacturing, chemistry, real estate, medicine, environmental consulting, indoor air quality, and cost of repair. Weyerhaeuser anticipates calling experts in the fields of environmental hygiene, structural engineering, medicine, and any fields necessary for rebuttal.

          2.     The parties propose no limitations regarding use or number of expert witnesses, and expert witness discovery and procedures will be conducted in accordance with the Federal Rules of Civil Procedure.

          3.     The parties shall designate all experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(2) on or before: Plaintiffs propose March 23, 2018.  Defendant proposes June 22, 2018.  **Court:  June 1, 2018**

          4.     The parties shall designate all rebuttal experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(2) on or before: Plaintiffs propose April 27, 2018.  Defendant proposes August 6, 2018.  **July 1, 2018**

      e.      Identification of Persons to Be Deposed: Plaintiffs have not identified any persons for deposition at this time, but will likely notice the depositions of at least two F.R.C.P. 30(b)(6) witnesses for Weyerhaeuser and F.R.C.P. 30(b)(6) depositions

of Plaintiffs' builder, Richmond American Homes. Weyerhaeuser anticipates the following depositions:

| Deponent | Estimated Length of Deposition |
|---|---|
| Each named Plaintiff | 7 hours each |
| Any Expert Designated by Plaintiffs | 7 hours |

f. Deadline for interrogatories: Plaintiffs propose May 1, 2018; Defendant proposes August 10, 2018.

g. Deadline for Requests for Production of Documents and/or Admissions: Plaintiffs propose May 1, 2018; Defendant proposes August 10, 2018.

## 10. DATES FOR FURTHER CONFERENCES

a. Status conferences will be held in this case at the following dates and times:

b. A final pretrial conference will be held in this case on November 5, 2018 at 10:00 o'clock a.m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

## 11. OTHER SCHEDULING MATTERS

a. Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement: None

b. The parties anticipate a trial length of 10 days, and the parties have requested a jury trial.

c. There are no pretrial proceedings that the parties believe may be more efficiently or economically conducted at an alternative location. However, there are currently three related cases (17-cv-02225-WJM-KLM; 17-cv-02230-CMA-MEH; 17-cv-

02227-PAB-STV) involving additional plaintiffs with identical claims against Weyerhaeuser, which Plaintiffs believe should be consolidated for all purposes. Weyerhaeuser contends that consolidation is inappropriate because, among other reasons, Weyerhaeuser has moved to compel arbitration with many of the plaintiffs in the other cases.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all pro se parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13. AMENDMENTS TO SCHEDULING ORDER

The scheduling order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, this 13th day of November, 2017.

BY THE COURT:

S/Michael E. Hegarty
United States Magistrate Judge

APPROVED:

**The Nelson Law Firm, LLC**

*/s/ Mark W. Nelson*
Mark W. Nelson, #27095
Wyatt M. Cox, #46679
Colleen S. Nelson, #36942
1740 High Street
Denver, Colorado 80218
Telephone: 303-861-0750
Facsimile: 303-861-0751
mark@nelsonlawfirm.net
wyatt@nelsonlawfirm.net
colleen@nelsonlawfirm.net
ATTORNEYS FOR PLAINTIFFS

**Perkins Coie, LLP**

*/s/ Alexander H. Bailey*
Craig M. J. Allely, #17546
Alexander H. Bailey, #45219
Daniel Graham, #45185
1900 Sixteenth Street, Suite 1400
Denver, Colorado 80202
Telephone: 303-291-2300
Facsimile: 303-291-2400
callely@perkinscoie.com
dgraham@perkinscoie.com
abailey@perkinscoie.com
ATTORNEYS FOR DEFENDANT