**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-02230-PAB-MEH

JANET CHI, individually and on behalf of minor child, J.C.,
DAVID CHI, individually and on behalf of minor child, J.C.,
WEN-CHENG CHI,
SHIU-SHIA WU,
SHASHI RAJYAGOR, individually and on behalf of minor children, A.R. and S.R.,
DIVYESH RAJYAGOR, individually and on behalf of minor children, A.R. and S.R.,
NEAL LOY,
BRIENNE LOY,
ANTERIO KITTRELL, and
JOELLA KITTRELL,

     Plaintiffs,

v.

WEYERHAEUSER COMPANY, and
WEYERHAEUSER NR COMPANY,

     Defendants.

---

**RESPONDENT WEYERHAEUSER COMPANY'S**
**MOTION TO EXCLUDE TESTIMONY OF WARREN HARRIS**

---

Pursuant to Federal Rules of Evidence 701 and 702, Weyerhaeuser moves to exclude the testimony of Plaintiffs' proposed expert witness Warren Harris.

Mr. Harris is a forensic chemist, but in reaching his opinions in this case, he did not rely on his skill or expertise as a forensic chemist. In fact, Mr. Harris did not do any testing or scientific analysis of any kind. Instead he presents opinions that are, by his own admission, merely a summary of Weyerhaeuser's internal documents and internet searches that he conducted. Mr. Harris then puts his own spin on the documents, often misunderstanding them, in part because he never spoke to their authors or read their deposition transcripts before reaching his conclusions.

LEGAL144478060.1

The spin that Mr. Harris puts on the documents he reviewed is also not based on his skill, expertise, or training as a forensic chemist. Instead it is based on inferences that Mr. Harris claims anyone would draw if they read the same documents.

Mr. Harris's "opinions" are more argument than expert opinion and are inadmissible for a number of reasons. First, most of his opinions are not expert opinions at all, but are, instead, inadmissible lay-opinion testimony. Second, Mr. Harris acknowledges that he has no expertise in the few subjects on which he does present technical information, such as the health risks of formaldehyde or government regulations, but has merely repeated information he found in an internet search. Third, several of his other opinions are purely legal conclusions that are also inadmissible. Finally, given the errors in his summaries and the fact that his other opinions are based on little more than Google searches, his opinions are not reliable. As a result, the arbitrator should exclude Mr. Harris's opinions in their entirety.

## I.    BACKGROUND

Warren Harris is a forensic chemist. Allely Decl., Ex. 1, Report Prepared by Warren Harris, February 26, 2019 ("Rep.") 23[1]; Allely Decl., Ex. 4, Transcript of Deposition of Mr. Warren Harris, April 19, 2019 ("Dep.") 34:12–14. His claimed expertise is in using chemical analysis to identify unknown substances and to determine the cause of failures. Rep. 23; Dep. 35:9–38:8. But Mr. Harris did not employ that expertise in this case. Dep. 41:2–6; Dep. 42:5–8; Dep. 157:5–18.

---

[1] Mr. Harris's expert report was submitted separately on behalf of claimants Justin and Deanna Gilchrist, and claimants Jon and Allie Sparrow. *See* Allely Decl. ¶¶ 2–3, Ex. 2, Ex. 3. These reports are substantively identical. Allely Decl., Ex. 4, Transcript of Deposition of Mr. Warren Harris, April 19, 2019 286:2–11. Accordingly, all citations to Mr. Harris's report filed on behalf of claimants Justin and Deanna Gilchrist also refer to the same statements in Mr. Harris's report filed on behalf of claimants Jon and Allie Sparrow and *vice versa*. Weyerhaeuser moves to exclude all of Mr. Harris's opinions expressed in each of these reports, as well as all opinions expressed in Mr. Harris's rebuttal report. *See* Allely Decl. Ex. 2, Ex. 3, Ex. 4.

Mr. Harris did not conduct any kind of scientific analysis in this case. Dep. 62:12–21. He did not test or examine the subject I-joists or Flak Jacket coating. Dep. 42:17–20; Dep. 62:22–24. He did not conduct any analysis regarding the efficacy of the remediation methods Weyerhaeuser offered. Dep. 63:3–6. He did not visit or conduct any testing at the plaintiffs' allegedly affected homes. Dep. 62:22–63:2; Dep. 80:2–9. And he did not interview the plaintiffs or anyone at Weyerhaeuser. Dep. 43:20–22; Dep. 80:21–24. In fact, he did not even review the deposition transcripts of Weyerhaeuser's employees until after reaching his conclusions. Dep. 44:2–7.

Instead, in this case, Mr. Harris was hired to review Weyerhaeuser's business records and present his "findings and observations regarding Weyerhaeuser's development, production and remediation" of the Generation 4 Flak Jacket coating at issue in this case. Rep. 1; Dep. 62:2–11. Accordingly, the majority of Mr. Harris's conclusions are summaries or characterizations of the information contained in the documents he reviewed. He testified that the information he gleaned from the documents is stated "in plain English" and "easy to read for all." *See, e.g.*, Dep. 69:1–7. He further testified that he did not employ any special experience, skill, or expertise to reach his conclusions except his "ability to read." *See, e.g.*, Dep. 68:22–69:11.

## II.    ARGUMENT

Mr. Harris presents his opinions in forty-six separate numbered paragraphs in section 4 of his report. Rep. 18–22; Dep. 63:12–17. These opinions are supported by the fifty-eight numbered paragraphs in Section 3 of his report and the accompanying "JENSEN HUGHES Comment" paragraphs that follow some of them. Rep. 4–18; Dep. 65:1–3. Appendix A to this motion specifies Weyerhaeuser's bases for excluding each of Mr. Harris's opinions and provides selected excerpts of Mr. Harris's testimony to support those bases. This motion, however, addresses Mr. Harris's

3

proposed opinions in three broad categories: (1) proposed opinions that summarize documents; (2) proposed opinions about topics on which Mr. Harris is not a qualified expert; and (3) proposed opinions that are in the form of legal conclusions. All of Mr. Harris's proposed opinions should be excluded.

### A.    Proposed Opinions Summarizing Documents

Mr. Harris's proposed opinions that summarize Weyerhaeuser's business documents should be excluded as inadmissible lay testimony or, in the alternative, as unhelpful and unreliable expert testimony.[2] As an initial matter, these opinions do not depend on expertise, but instead are merely lay testimony based on Mr. Harris's "plain English" reading of the documents. Further, by his own admission, Mr. Harris is no more qualified to interpret these documents than anyone who can read. Because these opinions are neither based on Mr. Harris's personal perception, nor helpful to the jury, they are inadmissible as lay opinions. *See* Fed. R. Evid. 701(a)–(b). Even if Mr. Harris's summaries could qualify as expert opinions, they still would be inadmissible because they are not helpful to the jury, and they contain a number of errors that demonstrate they are not reliable. *See* Fed. R. Evid. 702(a), (c)–(d).

### 1.    Mr. Harris's Summaries Are Inadmissible Lay Opinion Testimony

The majority of Mr. Harris's purported expert opinions are merely summaries or characterizations of Weyerhaeuser business records that Mr. Harris read in connection with this case. Under the Federal Rules of Evidence, such opinions are not expert opinion testimony at all,

---

[2] The arguments in this section apply to Mr. Harris's proposed opinions in paragraphs 4.1.4 through 4.1.46. Rep. 19–22. They also apply to the "Rebuttal Statement[s]" on pages 2–4 of Mr. Harris's rebuttal report, which merely repeat and reemphasize opinions in his original report. *See, e.g.*, Allely Decl, Ex. 3, Rebuttal Report Prepared by Warren Harris, April 15, 2019 ("Rebuttal Rep.") 2 ("As presented in our report . . ."); *id.* at 3 ("As stated in the Jensen Hughes report . . ."); *id.* ("And, as previously stated . . ."); *id.* at 4 (". . . our conclusion stands that . . .").

but rather inadmissible lay opinion testimony.

The Federal Rules of Evidence distinguish between Rule 701 lay opinion testimony and Rule 702 expert opinion testimony. Fed. R. Evid. 701; Fed. R. Evid. 702; *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214–15 (10th Cir. 2011). The Federal Rules of Evidence allow expert opinion testimony because "[a]n intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge." Fed. R. Evid. 702 advisory committee's note to 1972 proposed rules. A qualified expert witness may testify in the form of an opinion if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *see also James River Ins. Co.*, 658 F.3d at 1214–15. Lay opinion testimony, on the other hand, consists of opinions given on matters that do not require any specialized knowledge, are within the realm of common experience, and could be reached by any ordinary person. *James River Ins. Co.*, 658 F.3d at 1214.

Mr. Harris bases his opinions regarding Weyerhaeuser's development, production, and remediation of the TJI Joists with Generation 4 Flak Jacket Protection (the "Joists") exclusively on the internal Weyerhaeuser business records that plaintiffs provided to him. Dep. 80:25–81:4. Mr. Harris stated repeatedly in his deposition that his job was only to read and summarize the documents, that he employed no special skills or expertise to do so, and that anyone who can read English could read the same documents and reach the same conclusions. Examples of these admissions are compiled in Appendix A. As a result, Mr. Harris's proposed opinions about Weyerhaeuser's development, production, and remediation of the Joists do not qualify as expert opinion testimony because, as he admits, they are not based on any scientific, technical, or

specialized knowledge.

### a. Mr. Harris's Lay Opinions are Not Based on Personal Perception

Mr. Harris's summary conclusions are not based on his personal perception, so they must be excluded. Lay opinion testimony must be "rationally based on the witness's perception." Fed. R. Evid. 701(a). When a witness testifies that he has never visited the scene of the alleged tort, has learned everything about the alleged tort second-hand, and knows "little about" the defendant's operations or the circumstances surrounding that alleged tort, then he cannot offer lay opinion testimony about whether the tort could have been prevented. *Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 226 (3d Cir. 2008). Mr. Harris did no testing in this case; nor did he examine the Joists at issue, visit the plaintiffs' allegedly affected homes, or interview anyone involved. Dep. 43:20–22; Dep. 62:12–63:2; Dep. 80:21–24. His lay opinion testimony is therefore inadmissible.

### b. Mr. Harris's Lay Opinions are Not Helpful to the Jury

Mr. Harris's summary conclusions are not helpful to the jury—and are accordingly inadmissible—because, as Mr. Harris states, anyone who can read English can read the documents themselves and come to the same conclusions he did. Lay opinion testimony is inadmissible if "the witness is no better suited than the jury to make the judgment at issue." *United States v. Marquez*, 898 F.3d 1036, 1049 (10th Cir. 2018) (quoting *United States v. Brooks*, 736 F.3d 921, 931 n.2 (10th Cir. 2013)). Where a witness tries "to introduce meaningless assertions which amount to little more than choosing up sides," the testimony should be excluded. Fed. R. Evid. 701 advisory committee's note to 1972 proposed rules; *see also Marquez*, 898 F.3d at 1049. That is precisely the case here. Further, "[i]f the jury already has all the information upon which the witness's opinion is based, the opinion is not admissible." *United States v. Henke*, 222 F.3d 633, 641 (9th

Cir. 2000). In this case, Mr. Harris admits that he is no better positioned than an ordinary person to interpret the documents he reviewed. And those documents are otherwise available for the jury to interpret in the first instance. Mr. Harris should not be permitted to promote his unremarkable and biased summaries to the jury; the jurors can interpret the facts for themselves.

## 2.     As Expert Opinions, Mr. Harris's Summaries Are Neither Helpful Nor Reliable

Even if Mr. Harris's summary conclusions could be classified as expert opinion testimony, they should be excluded because they (1) do not help the jury and (2) are not reliable.

First, as discussed previously, Mr. Harris's opinions are unhelpful to the jury. If proposed expert opinions are unhelpful, they should be excluded as "superfluous and a waste of time." Fed. R. Evid. 702 advisory committee's note to 1972 proposed rules. Mr. Harris's summaries do not aid the jury, who—based on a plain reading of the documents—could interpret them at least as well as Mr. Harris can. Further, the jury will have the benefit of hearing testimony from the witnesses who drafted the documents—testimony Mr. Harris didn't even bother to review—and therefore will actually be in a better position than Mr. Harris to interpret the documents he attempted to summarize. Including his opinions would therefore increase the time and expense of this proceeding with no benefit.

Second, Mr. Harris's opinions are not admissible because they fail the reliability requirements of Rule 702. "To be reliable, expert testimony must be 'based on actual knowledge, and not mere 'subjective belief or unsupported speculation.'"" *Pioneer Centres Holding Co. Employee Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1341–42 (10th Cir. 2017), *cert. dismissed sub nom. Pioneer Centres Holding v. Alerus Fin.*, 139 S. Ct. 50 (2018) (quoting *Mitchell v. Gencorp., Inc.*, 165 F.3d 778, 780 (10th Cir. 1999)). "When expert opinion

'is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict' and will be excluded." *Id.* at 1342 (quoting *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993)).

Mr. Harris's proposed opinions contain numerous errors and unsupported speculation that make them unreliable. The following are but a few examples of errors that Mr. Harris acknowledged he made in attempting to summarize the documents he reviewed:

- Mr. Harris acknowledged that his "opinion" that Weyerhaeuser had exhausted its budget for trying to reduce formaldehyde admissions from the Joists was based on a misreading of the email he was summarizing. Rep. 9; Dep 64:7–18; Dep. 149:21–151:13.

- Mr. Harris acknowledged that an email he originally claimed was discussing the Safety Data Sheet ("SDS") for the Joists was actually discussing proposed EPA regulations, and therefore that his conclusions about that email were wrong. Dep. 193:1–197:2.

- After first claiming that testing was conducted by a third-party laboratory before the off-gassing issue was discovered, Mr. Harris later admitted that his conclusion was wrong and based on his incorrect reading of the document's date. Dep. 202:16–203:23.

- Mr. Harris acknowledged that an email he claimed was critiquing the SDS that Weyerhaeuser issued for the Joists was in fact discussing the SDS for one of its component parts, which was drafted by another company. *See* Dep. 205:18–207:5.

- Mr. Harris admitted that the date he attributed to an email was off by almost one year and, when asked to explain his misinterpretation of the document, stated that he "[had not] read the email that closely." Dep. 210:14–212:24. He then acknowledged, based on the content of the email, that it did not relate to the Joists in this litigation. Dep 212:25–213:14.

These errors are unsurprising given that (1) Mr. Harris's opinions are based on his non-technical review of the documents, rather than any specialized skill or expertise, and (2) the fact that

Mr. Harris reached his conclusions without speaking to, or even reviewing the testimony of, any witnesses.

Further, Mr. Harris relies on unsupported speculation. In his deposition he often stated that he believed, without evidence, that his conclusions were correct. Dep. 97:18–98:8; Dep. 134:9–17; Dep. 163:4–15; Dep. 180:7–182–25; Dep. 183:17–185:1; Dep. 190:18–191:11; Dep. 220:15–21; Dep. 235:7–12; Dep. 249:19–250:22; Dep. 283:8–284:8; Dep. 291:24–292:2; Dep. 298:20–299:3; Dep. 300:18–21. As a result, Mr. Harris's opinions are not reliable.

Mr. Harris's opinions about Weyerhaeuser's development, production, and remediation of the Joists must be excluded. They are inadmissible lay opinions that are not based on Mr. Harris's personal perception and are not helpful to the jury. Even if they were expert opinions, they would be inadmissible because they are not helpful and not reliable.

### B.      Proposed Opinions Regarding Potential Health Risks

Mr. Harris's opinions regarding potential health risks of formaldehyde exposure should be excluded.[3] Because Mr. Harris is, by his own admission, not qualified as an expert in toxicology, his opinions regarding the potential health risks of exposure to formaldehyde are inadmissible. *See* Fed. R. Evid. 702. Even if he could be considered an expert with respect to this topic, his opinions, based on the results yielded by an internet search, must be excluded because they are not based on sufficient facts or data and are not the product of reliable principles and methods. *See* Fed. R. Evid. 702(b).

### 1.      Mr. Harris Is Not a Qualified Expert

Mr. Harris is not qualified as an expert witness with respect to his opinions related to the

---

[3] The arguments in this section apply to Mr. Harris's proposed opinions in paragraphs 4.1.1 and 4.1.2. Rep. 18–19.

potential health risks associated with exposure to formaldehyde.

A proposed expert witness may not offer expert opinion testimony unless he is qualified "by knowledge, skill, experience, training, or education" to render an opinion on that topic. Fed. R. Evid. 702; *Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1282–83 (10th Cir. 2018). A witness is not qualified as an expert on a topic if she concedes that she "is not an expert" on the subject, "kn[ows] little—if anything—about the subject," "has done no research" on the subject, and "has never been published" in the subject. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001).

By his own admission, Mr. Harris is not qualified as an expert in toxicology, human carcinogens, or the health risks associated with exposure to formaldehyde. Dep. 85: 3–5; Dep. 87: 20–25; Dep. 88:24–89:4. In fact, he confesses that his opinions regarding the potential health effects of exposure to formaldehyde were formed based on the results of an internet search and that he did "not employ[] a lot of expertise here." Dep. 72:14–24; Dep. 85: 6–11; Dep. 89:5–14; Dep. 91:9–22. Mr. Harris does not cite any scholarly articles or peer-reviewed studies to support his assertions regarding formaldehyde and, in some instances, admitted that he consulted no such sources. *See, e.g.*, Dep. 86:8–11. Instead, he asserts that the dangers associated with exposure to formaldehyde are "common knowledge in our society," Dep. 73:3–7, and cites websites where, he says, "someone can open up and read what [he] read." Dep. 73:21–23. This cursory research falls far short of the Rule 702 requirement that a witness be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702.

Further, the mere fact that Mr. Harris is a scientist in another area of study does not change the fact that he is unqualified to opine on the issue of the potential health effects of exposure to

formaldehyde. *Ralston*, 275 F.3d at 970 (holding that "merely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue"); *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1133–34 (10th Cir. 2009) (upholding district court's determination that an expert in road bike races was not qualified as an expert in mountain bike races); *id.* (citing *Bertotti v. Charlotte Motor Speedway, Inc.*, 893 F. Supp. 565, 569–70 (W.D.N.C.1995) (striking expert testimony regarding design of go-kart track where expert had experience in automobile racing, but not go-kart racing)). Mr. Harris does not have any knowledge, skill, experience, training, or education that would qualify him to offer expert opinions on the potential health risks associated with exposure to formaldehyde, and therefore his opinions on those subjects should be excluded.

### 2.      Mr. Harris's Opinions Are Not Reliable

Even if Mr. Harris were qualified as an expert, his opinions regarding the health risks associated with exposure to formaldehyde would not be admissible because they (1) are not based on sufficient facts or data and (2) are not the product of reliable methods. *See* Fed. R. Evid. 702(b)–(c). The federal rules do not allow a witness to testify based on the results of nothing more than an internet search, because this is not a reliable method for conducting scientific research. *See Cole v. JPMorgan Chase Bank, N.A.*, No. C13-959RSL, 2014 WL 1320140, at *4 (W.D. Wash. Mar. 31, 2014) (striking proposed expert opinions because they "appear to be based on speculation and internet searches"). And Mr. Harris's generalized assertions do not appear to be based on any data at all. He admits that he did no analysis with respect to how much formaldehyde the plaintiffs may have been exposed to or the duration of any exposure. Dep. 82:23–83:3. He also admits that he has no understanding of the concentration of formaldehyde or duration of exposure required to subject

an individual to an increased risk of cancer. Dep. 89:24–90:4. Mr. Harris's proposed opinions are nothing more than speculation based on internet searches. They do not meet the reliability standards imposed by Rule 702. *See* Fed. R. Evid. 702(b)–(c); *Cole*, 2014 WL 1320140, at *4.

### C.      Proposed Opinions in the Form of Legal Conclusions

A number of Mr. Harris's proposed opinions are inadmissible legal conclusions.[4] These proposed opinions should be excluded because opinions in the form of legal conclusions are not helpful to the jury. *See* Fed. R. Evid. 702(a). Further, these opinions are not the product of reliable principles and methods because, as Mr. Harris acknowledges, he has never read the statutes and regulations on which he opines. *See* Fed. R. Evid. 702(c).[5]

### 1.      Mr. Harris May Not Offer Legal Conclusions As Opinions

Mr. Harris may not offer opinions in the form of legal conclusions. "[A]n 'expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts.'" *Pioneer Centres Holding Co.*, 858 F.3d at 1342 (quoting *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998)). "This type of opinion does 'not aid the jury in making a decision, but rather attempts to substitute [the expert's] judgment for the jury's.'" *Id.* at 1342–43 (quoting *Baumann v. Am. Family Mut. Ins. Co.*, 836 F. Supp. 2d 1196, 1202 (D. Colo. 2011)) (collecting cases). Mr. Harris offers opinions relating to California Air Resources Board (CARB) standards, Environmental Protection Agency (EPA) Regulations, Occupational Safety and Health Administration (OSHA) regulations (including those related to Safety Data Sheets), and the Federal Hazardous Substances Act, 15 U.S.C. §§ 1261–1278a

---

[4] The arguments in this section apply to Mr. Harris's proposed opinions in paragraphs 4.1.3, 4.1.16, 4.1.23, 4.1.26, 4.1.42, 4.1.44, and 4.1.45. Rep. 19–22.

[5] This argument also applies to the "Rebuttal Statement" on page 5 of Mr. Harris's rebuttal report. Rebuttal Rep. 5.

(FHSA). Rep. 5, 12, 19–20. Whether and, if so, how these statutes and regulations apply in this case is not the proper subject of expert testimony. *Pioneer Centres Holding Co.*, 858 F.3d at 1342.

Mr. Harris also offers opinions phrased as legal conclusions, including assertions that "[t]he failure of Weyerhaeuser to fully test the prototype performance of its fire inhibiting paint system resulted in the distribution of a defective and dangerous product;" "Weyerhaeuser knowingly failed to [complete] testing formula prototypes for formaldehyde emissions;" "[t]he subject TJI Joists with Flak Jacket GEN-4 Protection were placed into the stream of commerce by Weyerhaeuser in a defective condition that created an unreasonable danger to consumers and violated federal statutes;" and "Weyerhaeuser failed to adequately warn homebuilders, distributors and homeowners of the dangers associated with the off-gassing of formaldehyde from the subject TJI Joists with Flak Jacket GEN-4 Protection." Rep. 21–22. By advocating these unsupported legal conclusions, Mr. Harris does not aid the jury in making a decision, but rather attempts to substitute his judgment for that of the jury. *See Pioneer Centres Holding Co.*, 858 F.3d at 1342–43. Expert testimony may not be used in this manner.

### 2.     Mr. Harris's Opinions Are Not Reliable

Even if the statutes and regulations Mr. Harris cites were a proper subject of expert opinion testimony, Mr. Harris's opinions with respect to these statutes and regulations are not the product of reliable principles and methods.

Mr. Harris admits that he is not an expert with respect to any of the statutes or regulations that he cites. Dep 101:16–19 (CARB, EPA); Dep. 78:16–18 (OSHA); Dep. 134:3–4, 248:24–249:5 (SDS Regulations); Dep 108:14–16 (FHSA). In fact, he has not even read the CARB standards, the EPA regulations, or the FHSA. Dep. 99:14–16 (CARB); Dep. 102:20–103:5 (EPA); Dep.

106:20–107:9 (FHSA). Nor has he researched the background of the CARB standards. Dep. 96:8–14. At the time of his deposition, he was confused as to whether the CARB standards even applied to the Joists in the case, first opining that they were excluded from the standards because they do not contain formaldehyde, then stating he did not know about any exclusions in the CARB standards, and then admitting that the Joists were expressly excluded by the standards. Dep. 94:8–15; Dep. 99:14–16; Dep. 101:4–10. Nor does he know whether the FHSA even applies to the Joists. Dep. 107:24–108:2. Although he criticized the SDS for the Joists, when pressed, he could not say whether certain information was actually required to be in the SDS or whether Weyerhaeuser could rely on the SDSs provided by component manufacturers. Dep 134:5–135:2; Dep. 249:2–5.

Like his opinions about the potential health risks of exposure to formaldehyde, Mr. Harris's opinions about governing statutes and regulations are nothing more than speculation largely based on internet searches. They do not meet the reliability standards imposed by Rule 702. *See* Fed. R. Evid. 702(c); *Cole*, 2014 WL 1320140, at *4.

Mr. Harris's opinions in the form of legal conclusions must be excluded. They are not helpful to the jury and his opinions relating to statutes and regulations are not reliable.

## III.    CONCLUSION

Mr. Harris's opinions are argument rather than expert testimony. Most of them are simply summaries of what Mr. Harris read, intermingled with unsupported inferences that Mr. Harris believes any reader would draw. The few technical areas Mr. Harris does address are outside of his expertise and based on internet searches. Overall his opinions are not helpful to the jury, and his proposed testimony attempts to circumvent the ordinary presentation of evidence and usurp the role of the jury. His testimony should be excluded.

DATED this 22nd day of May 2019          Respectfully submitted,

                                         **PERKINS COIE LLP**


                                         By: *s/ Craig M.J. Allely*
                                             Craig M. J. Allely, #17546
                                             CAllely@perkinscoie.com
                                             Michael A. Sink, #36064
                                             MSink@perkinscoie.com
                                             Daniel Graham, #45185
                                             DGraham@perkinscoie.com
                                             Lindsey E. Dunn, # 49547
                                             LDunn@perkinscoie.com
                                             Marcus A. Haggard, #50388
                                             MHaggard@perkinscoie.com
                                             1900 Sixteenth Street, Suite 1400
                                             Denver, CO  80202-5255
                                             Telephone:  303.291.2300
                                             Facsimile:  303.291.2400

                                             Daniel P. Ridlon, WSBA #37927
                                             DRidlon@perkinscoie.com
                                             Leigh E. Sylvan, WSBA #52415
                                             LSylvan@perkinscoie.com
                                             1201 Third Avenue, Suite 4900
                                             Seattle, Washington 98101-3099
                                             Telephone: 206.359.8000
                                             Facsimile: 206.359.9000

                                         **Attorneys for Defendants,**
                                         **WEYERHAEUSER COMPANY**
                                         **WEYERHAEUSER NR COMPANY**

15

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2019, I electronically served a copy of this motion on counsel for plaintiffs at the following e-mail addresses:

Mark W. Nelson, Esq.
mark@nelsonlawfirm.net

Colleen S. Nelson, Esq.
colleen@nelsonlawfirm.net

Jeffrey Scott Sweeney
scott@nelsonlawfirm.net

By: *s/ Craig M. J. Allely*
　　Craig M. J. Allely
　　CAllely@perkinscoie.com
　　1900 Sixteenth Street, Suite 1400
　　Denver, CO 80202-5255
　　Telephone: 303.291.2300
　　Facsimile: 303.291.2400

　　**Attorney for Defendant,**
　　**WEYERHAEUSER COMPANY**